IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 95 CR 508-6 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| JOHNNY JACKSON, | ) | |
| Defendant. | ) | |

*MR. JACKSON'S MOTION FOR TERMINATION OF SUPERVISION*

JOHNNY JACKSON, through his attorney, respectfully requests that Mr. Jackson's supervised release be terminated early so that he may have the freedom to travel unencumbered and in a cost-effective manner for his employment, and so that he may accept employment that would enable him to relocate to a different state without interference. In support of this motion, Mr. Jackson, through counsel, states the following:

(1) Mr. Jackson is employed by East Lake Management and Development Group, where he receives a regular paycheck; has started his own businesses; and through a non-profit organization that he and his wife initiated, he has been actively involved in community charity work throughout Chicago, Illinois; Gary and Indianapolis, Indiana; and Houston, Texas.

(2) Mr. Jackson's employer at East Lake Management has written a letter attesting to Mr. Jackson's value as an employee. Exhibit 1. George Askew, the Director of East Lake Management, writes that:

> Johnny has been an enormous asset to our safety team. In his time with our team, he has consistently displayed quality traits such as

> punctuality, efficient and effective management skills, and attention to detail. In his position, he has been responsible for multiple properties and has served our team impeccably.
>
> We enjoy working with Johnny!

Mr. Jackson has earned the respect and acknowledgement of his employer over the past year or more. There is no need for supervision or intervention in this positive relationship.

(3) In addition to his employment with East Lake Management and Development Group, Mr. Jackson has worked on a contract basis with J. Prince Enterprises, training and promoting boxers. He has been involved with preparing fights that have taken place in Texas, Oklahoma and Nevada. Mr. Prince has written a compelling letter of support on Mr. Jackson's behalf. Exhibit 2, letter from J. Prince. Mr. Prince writes that:

> I invited Johnny to come and work with me in Houston before he was released from prison because I have come to have faith in Johnny's mindset and capabilities.
>
> Once he was released and denied a transfer to Houston, I offered him a position with my team at Prince Boxing. Since accepting the position and being granted permission to travel with us for work, Johnny has excelled at administering our strength training and conditioning program to boxers, making him an enormous asset to our regimen.
>
> Johnny's *drive and positive ambition have allowed him to accomplish more in the short period of time since his release from prison, than many people tend to accomplish in decades*. Not only is he an asset to me, he has opened several businesses, released a book, and is rebuilding bonds with family and friends; but what I'm most proud of is his love and dedication to the underprivileged communities that he is serving throughout this nation via his community organizations.
>
> I recently had an opportunity to partner with Johnny in my hometown of Houston, TX for a relief event that his organizations and their

2

>partners sponsored after the disastrous snowstorm back in February. It was an honor to watch him fulfilling the goals that he made about giving back to underprivileged communities after being a victim of and party to the negative circumstances overwhelming such areas nationwide. [emphasis added]

Mr. Jackson's positive accomplishments merit early termination of unnecessary supervision.

(4)  Mr. Jackson applies through the Probation Office to travel, but this process is cumbersome, time-consuming, and increases the expenses for those who are paying for his travel. The time requirement for permission to travel is 30 days. This means that opportunities that arise with a narrower lead time are unavailable to Mr. Jackson. The time from submission of a request with sufficient lead -time has frequently been approved within days or a week of necessary travel times, increasing the cost of ticketing expenses for the potential employer in a way that is neither necessary nor reasonable. Missed opportunities include the following:

(a)  In 2020, Mr. Jackson was offered a permanent position with Prince Boxing; however, he was unable to attend regularly scheduled training and boxing match events due to processes and restrictions placed on Mr. Jackson's travel.

(b)  In February of 2021, based on Mr. Jackson's non-profit community work in Chicago, he received a request to orchestrate a huge relief effort in Houston, Texas to serve disaster victims in need. The project was to be undertaken with one of Mr. Jackson's community organization's partners. Mr. Jackson sought the approval of the probation officer, who required a letter from the community partner. After receiving this letter, Mr. Jackson did not receive a timely response to his

travel request and so had to bring the matter before the court to be cleared for travel.

      (c)     Later in February, Mr. Jackson was offered a consulting position with a company called TRU Colors Brewing. Mr. Jackson accepted the offer and is required to travel occasionally in that position in order to conduct seminars as well as attend company events. He received approval from the probation officer only after the officer received direct communication from the contracting agency.

      Mr. Jackson has not been able to participate fully due to the lack of sufficient lead time for certain events and the contractor's unwillingness to have to communicate with the probation officer. The probation officer's insistence on direct communication with every employer or potential employer is unusual and undermines Mr. Jackson's ability to interact as a free agent in the legitimate business world.

      (d)     Since Mr. Jackson's release from prison, he has expressed a desire to relocate in order to allow himself the best possible opportunity for a fresh start. Mr. Jackson and his wife have been offered multiple potentially fruitful opportunities in Houston, Texas, and other areas which they have been unable to accept without also accepting onerous and unnecessary conditions or restrictions that would defeat the purpose behind beginning anew in a new environment.

(5)    Mr. Jackson is capable of much more positive work and action but has arrived at the point where his supervision is a hindrance to his progress rather than a help to reintegrate him into society and keep him on the right track. The timing factor

involved in probation office processes in Chicago and in other locations throughout the country is adding extra and unnecessary expenses to Mr. Jackson's travel costs. Mr. Jackson also has encountered bookstores and other businesses who would like to host Mr. Jackson, but do not want to become involved with or be questioned by a federal probation officer.

(6)     Mr. Jackson has not deliberately violated his conditions of supervision.

(7)     The one Special Report to the Court from the probation officer concerned Mr. Jackson's communication with individuals who are currently incarcerated. No action was requested based on this Report. A review of the telephone conversations referenced in the report reveals that Mr. Jackson serves as a role model for others who are anxious to follow his success upon their own release from custody, ask for small amounts of commissary assistance, or share stories about family members, mutual friends and acquaintances, and other legitimate topics. These phone calls do not provide any evidence of criminal activity of any kind. Mr. Jackson should be encouraged in his attempts to show others a better way of living and contributing to the community than through involvement in criminal conduct.

(8)     In November 2020, during a hearing on Mr. Jackson's request for Early Termination of Supervision, the probation officer told the Court that Mr. Jackson had not been forthcoming about his financial affairs. Since that time, to ensure no such further claims, Mr. Jackson has completed the standard financial disclosure forms for the probation office and has made monthly submissions to the officer which include: (a) personal/business finance updates; (b) job retention and/or any

new employment information, including pay stubs and contract details; (3) any law enforcement interaction updates; (c) community service information along with attached photo/video documentation; (d) any recent accolades or achievements; and (e) a general update on health and wellness. These submissions are delivered early the following month for each month prior.

To avoid any confusion or misunderstanding about compliance, Mr. Jackson sends copies of each submission to his attorney and specifically requests an email reply if the information contained in each submission is insufficient for any reason. To date, no such email reply has been received by Mr. Jackson from his probation officer. *See,* Exhibits 3-8.

(9) Mr. Jackson originally received concurrent supervised release terms of 5 years, based on being sentenced under Title 21, U.S.C., Section 841(b)(1)(A). When Mr. Jackson's prison time was reduced under the provisions of the First Step Act, the corresponding supervised release term should also have been reduced to 3 years, under Title 21, U.S.C., Section 841(b)(1)(C).

(10) When in November of 2019, Mr. Jackson's sentence was reduced from 100 years to 20 years, his immediate release was ordered. Supervised release began on November 15, 2019.

(11) The 20-year sentence, with all good time credited, ordinarily results in an actual sentence of 17 years. Mr. Jackson actually served approximately 19 ½ years, having over-served his sentence by 2 ½ years.

(12) Mr. Jackson has now been successfully engaged in work, community charity

6

projects, and initiating his own companies since his release on November 15, 2019 - 19 months- more than one-half of a three-year supervised release term, and plenty of time to show the Court that he is stable, reintegrated into society in very positive ways, and no longer in need of the services or limitations of the United States Probation Office.

(13) Members of our community in Chicago as well as in Gary and Indianapolis, Indiana, have been impressed with the work that Mr. Jackson is doing and are supportive of his efforts. For example, the qualities that they see in Mr. Jackson are summarized by Larry Huggins, Riteway-Huggins Construction, who says:

> I am impressed with Johnny's ability to bring unity, progress, and enthusiasm to areas, situations, and circumstances that are extremely troubled and often underserved. It pleases me to see Johnny so vigorously taking advantage of the second chance that he was granted after serving such a lengthy prison sentence. I look forward to working with him more in the future.

Exhibit 9. Letter from Larry Huggins.

Indiana State Senator, Eddie Melton, writes on Mr. Jackson's behalf after having observed his work in Chicago and inviting him to do similar work in Gary, Indiana:

> I met Johnny in October of 2020 at an event he was sponsoring passing out food in an underprivileged neighborhood on the south side of Chicago. Since then, I have followed Johnny's work in that he has consistently done in his community as well as his engagement and service in different areas of the country; I am impressed at the level of passion and dedication with which he serves these communities.

Exhibit 10, Letter from State Senator Eddie Melton. Senator Melton also looks forward to doing more work with Mr. Jackson.

The Reverend John F. Harrell, a pastor of the Proviso Missionary Baptist Church, in Maywood, Illinois, also writes about Mr. Jackson's contributions to the community and his organization's involvement with Black Men United, another group working toward "violence reduction, mentorship, and workforce development within our ministry." Exhibit 11, Letter from Pastor Harrell.

Pastor Denell Howard met Mr. Jackson while Mr. Jackson was still in prison in 2015. Pastor Howard has been involved with Mr. Jackson's Visionary Initiatives and writes about a significant difference that Mr. Jackson made to youth in Pastor Howard's Indianapolis community:

> In April of this year, I mentioned in a Facebook post that my program for boys and young men in Indianapolis was raising money to pay for new cleats for our sports activities. Johnny caught wind of the effort and called me shortly after to inform me that his organization would be donating several skids of new cleats from the top shoe brands to us, so there was no need to continue our fundraising efforts for shoes. This is just a small testament to the sort of positive influence and kindness that Johnny has displayed since I've known him….. Johnny is a well-respected and appreciated member of the community!

Exhibit 12, Letter from Pastor Howard.

Mr. Jackson's most knowledgeable supporter, partner and advocate is his wife, Khalalah Jackson. She writes:

> Since his release from prison he has been a pilar of responsibility and love that has positively impacted our family, friends, and marriage in countless ways.
>
> Johnny really hit the ground running and he has given me an enormous burst of energy that has fueled me, as he and I have begun to build a strong foundation for a great life together. Johnny is my business partner, friend and mentor; he makes me a more productive

8

> and wise individual. We have accomplished a lot together in a short period of time and I have pure confidence in him in every way.
>
> Since being home, Johnny built a good credit score for himself, created several fruitful business plans, landed gainful employment, built strong family ties, and has given a dedicated effort to community service founding two nonprofit organizations and clocking nearly 500 hours of community service already this year.
> Moreover, Johnny has found a deep passion in his redemption given that he is able to gain such fulfillment and joy from his community endeavors. Johnny has for years expressed to me his strong desire to give back to the community that he harmed when he was younger. He is someone who is truly grateful for a chance at redemption. He has wasted no time in getting organized on a mission to prosper and be of true service to others.
>
> Johnny has displayed genuine growth and a strong desire for positive change. I am his greatest supporter and am proud to have Johnny as my husband!

Exhibit 13, letter from Khalalah Jackson.

(14)  The people who have worked and lived with Mr. Jackson and know him best attest to the fact that he has proved himself to be self-starting, self-supporting, and a valuable contributor to his community.  He has been involved with only legal and positive activities since his release, re-established his family connections and demonstrated his willingness and ability to lend a hand to others who are in need. There is no evidence, based on Mr. Jackson's life activities over the past 19 months that he is in need of, let alone requires, the Court's further supervision.

Congressman Bobby L. Rush, from the 1st District of Illinois, supports this Court in terminating Mr. Jackson's supervised release early. Exhibit 14, letter from Congressman Rush. Congressman Rush has interacted with Mr. Jackson while Jackson was working in his capacity as director of The Visionaries Initiative.  The

Congressman attests that Mr. Jackson serves as an important example to others in the work that he is doing and that he no longer needs the supervision of the Courts. He writes:

> Since I first supported Johnny in his petition for clemency, I have believed that he would take full advantage of a second chance at freedom and I am optimistic about Johnny's ability to reshape his life. He has continued to be a positive example for others, and a beacon of hope for all.
>
> I am happy to support him in his request for early termination of supervised release. Mr. Jackson, by the dint of his hard work on behalf of the neediest in our communities, has demonstrated that he no longer needs the supervision of the Courts.

WHEREFORE, JOHNNY JACKSON, respectfully requests that in the interests of justice, in recognition of all the hard work and positive community contributions Mr. Jackson already has made, and so that Johnny Jackson may continue to explore and accept the opportunities for work, advancement, and charity work unhindered, this Court enter an Order terminating his supervised release.

DATE:	June 10, 2021				Respectfully submitted,

						By:	s/Andréa E. Gambino
							Attorney for Johnny Jackson


LAW OFFICES OF ANDRÉA E. GAMBINO
53 W. Jackson Blvd., Suite 1332
Chicago, IL 60604
(312) 322-0014
agambinolaw@gmail.com

10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Grayson S. Walker, Esq.
Assistant United States Attorney
219 S. Dearborn Street, Suite 500
Chicago, Illinois 60604

and I hereby certify that I have mailed by United State Postal Service or hand delivered the document to the following non-CM/ECF participants: N/A.

DATE: June 10, 2021  Respectfully submitted,

By: s/Andréa E. Gambino
Attorney for Johnny Jackson

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312)322-0014
agambinolaw@gmail.com

o